this morning, one of which was submitted on the briefs. The other three are scheduled for argument this morning. The first case is case number 172456, Google LLC v. Conversant Wireless Licensing. The court issued an order at the end of last week because we spotted a possible standing issue. We don't know if there's a standing problem. If you agree that there's no standing problem, then we can move on very quickly. To the extent we need to debate the standing issue, we've allotted five minutes per side. But if the standing issue disappears, then you go back to your normal timeframe. So don't think you've just won four more minutes just in case. So let me begin with Google in terms of the issue of your honor. We have not. We haven't had a chance to discuss it. Okay. Do you think that both parties to this appeal have standing to appeal from this IPR? No, your honor. I think it's worth the court hearing about. Okay. All right. I mean, I and I think the parties are separately situated perhaps or it appears they may be. That's right. Okay, you can proceed. Good morning, your honors. May it please the court. Before I address the merits, I would like to address the standing issue as we just discussed. While only one appellant needs to have standing for this court to retain jurisdiction, we believe both Petitioner LG and Petitioner Google have standing here. Let me explain why. With respect to Petitioner LG, it is undisputed that Petitioner LG was Also, if you look at the infringement contentions, which are not part of the appendix here, but they were certainly part of the administrative record. It's exhibit 1013 and you can see that at least exhibit list at A249. You'll see those were submitted to the board below. So they're part of the administrative record. They show that in its contentions, conversant pointed to the LG Maps enabled devices and Google functionality for infringement. Now, so the products that were the allegedly infringing devices in the original lawsuit, are those still products that LG is marketing? I believe so, your honor. Okay, you don't know. As far as from what I understand, they are being marketed and if you actually look at the contentions here, going back to exhibit 1013, they were very broad in terms of the contentions that conversant asserted against LG in the litigation. Did you say page 1013? No, your honor. It's exhibit 1013 and it's appendix A249. It's an exhibit list that shows you that exhibit 1013 were the contentions that were submitted to the board. So what's the status of that litigation? So as conversant points out in its red brief, that litigation, at least with respect to the 667 patent, was dismissed without prejudice. And in fact, that was over LG's objection. LG wanted the case to be dismissed with prejudice. And we think that squarely puts this case, this case is not like Consumer Watchdog or Phygenics where the appellant was not engaged in any activity that could give rise to an infringement suit. So we believe here looking at conversant's contentions and given that they actually fought LG when they were trying to take the patent out in the district court, LG wanted a covenant not to sue and conversant did not give a covenant not to sue. So we think if you look at these facts collectively, we think they show that there's activity here that could give rise to an infringement suit and the fact that they did not give us a covenant not to sue further shows that they will sue again. What about these infringement contentions? They're not in the record before us. So how should we get a copy of those? Your Honor, we're happy to provide those to you. But like I said, they are part of the administrative record, which I understand the court does have access to before the board. They're certainly available publicly. That's right. Okay. But what Federal Circuit opinion do you think is closest to the facts of your case that would establish that LG has standing here for this appeal? Your Honor, I believe Altair is a case that supports us here and I think so does DuPont. I think if you look at both of those cases, they're unlike Consumer Watchdog and Phygenics where there was the appellant was some third party. They didn't have any activity that could possibly rise to the level of an infringement suit, but we think this case is like Altair and DuPont. And I think there's more here. Altair was a very fact-specific decision though. I think it's kind of hard to broadly extrapolate from that. Sure, Your Honor, but I think there are two or three key facts here that are pretty similar to Altair. One is this threat of infringement. Like I said, we asked them for a covenant not to sue. They refused. And also I think what's more here is you have to look at the bar under 315B and estoppel under 315E. Again, 315E certainly played a role in both the DuPont case and in the Altair case and we think it should play a role here  I believe our arguments are similar. So if you look at Google again, while the court does not need to find that Google has standing to retain jurisdiction on this appeal, we think Google does have standing. And there are a couple of reasons. One is, if you look at again, the infringement allegations going back to Exhibit 1013, which unfortunately is not part of the appendix, but it is part of the administrative record. If you look at the contentions, you'll see they point to consistently Google functionality. The Google Maps apps was pointed to in the contentions. And when you couple that with the fact that there would be a bar under 315E, this case is just like Altair, just like DuPont. And we believe Google independently has standing. But we've repeatedly said that 315E standing alone is not enough. Sure, Your Honor. And I think here you don't need to go that far and we're not asking the court to go this far. I think we're saying collectively, if you look at the facts here, 315E and the threat of an infringement lawsuit. But Google wasn't sued, right? Google was not sued, but... Did they seek to intervene in the action? So Google here actually stepped in and was defending LG in the litigation with respect to the patent and the infringement allegations. Was there an indemnity agreement? Your Honor, I'm not sure I can go that far in terms of the agreement, but I can certainly tell the court that there was Google agreed to defend LG with respect to the patent and the allegations with respect to Google functionality. When I go look at the infringement contentions in the administrative record, and you are telling me that there's a reference to Google functionality. Do the contentions actually allege that Google Maps or whatever it is you're referring to infringes the patent claims of the 667? What does it say precisely? Your Honor, I happen to have them here. I know you don't have them, but I think if you look at it, it's a claim chart that maps the claims to the Google Maps app and goes through limitation by limitation and attempts to allege infringement by Google Maps. So it takes just Google Maps and then explains how Google Maps satisfies each and every limitation of one of the claims of the 667? Your Honor, it does. It certainly points to Google Maps and it also points to the LG, what it calls. The answer is yes. Yes, Your Honor. Google Maps, just Google Maps alone, nothing else. It satisfies every single limitation. So Your Honor, I want to make sure I give you a complete answer. So it certainly points to the Google Map. The only other functionality as far as we can see in the claim charts that they pointed to were the extra devices that LG makes, right? So the LG devices, it said, when they are configured to run Google Maps, infringe the patent as we understand their contentions. Just to clarify, it actually uses the language Google Maps. We're not going to look at it and have to figure out what they're referring to. No, Your Honor. Are there particular pages that might be helpful for you to refer to? Or is it just general, the entire document? Sure, Your Honor. I think you can refer to the entire document, but I think you don't need to go any further than page one and I'll just read a couple of the passages for the Court's convenience. So they say, for example, LG Maps-enabled devices infringe this claim and then they go on and explain, using Google Maps as a non-limiting example, LG Maps-enabled devices having hardware and the Google Maps application perform the claim method. So would it be a joint infringement type of theory with Google or would it be a induced infringement or a 271C infringement? What do you think? Your Honor, I think if you look at their infringement allegations, I think they relied on all of them. But as I indicated, the patent was dismissed without prejudice and they left open. In fact, when they took it out of the case, they said, and I'll quote, they said, core wireless, it was known at that time, CW, will only reduce patents if it cannot be done without losing rights. And I'm reading that from DI 326. Now that's part of the district court record, which again is certainly available on PACER. That's Exhibit A at 2. So we think there's collectively, if you look at it, and Judge O'Malley, going back to your question on the estoppel issue, while this court has been reluctant to rely solely on estoppel, and while we're not relying solely on estoppel, we believe the Supreme Court has held that the risk of a collateral estoppel alone provides standing and that's in the electrical fittings case at 307 U.S. 241. And the Supreme Court elaborated on that principle in 445 U.S. 337. So again, I think if you look at it collect collectively, that there's this estoppel here is even broader than collateral estoppel because you also have 315B, as this court recently held in the click-to-call case, that a dismissal without prejudice can bar a party or does bar a party. That's what happened here. We have a dismissal without prejudice of the district court litigation. So we have every reason to believe that Converse and Will sue Google and or LG with respect to this patent. Okay, we went way over your time. We're going to go back and just restore the whole merits argument at 15 minutes when we get back to it, but I want to hear from the other side first. Sure. And we clearly are not going to be able to decide this issue until we see that the infringement contentions on the relevant portions of the district court docket. So if you could at least submit to us the citations that you gave us so that we can make sure we've got all the right all the things that you think are relevant from those two dockets. Sure, Your Honor. Okay, so tell us why it was clear that they were sued and they were sued with LG with respect to particular products, right? Yes, Your Honor. In the main case of court, the part that you didn't hear from the appellants is that the claims they were sued on have already been canceled by the Patent Office. So those claims are gone from the patent. And the only claims that are left are claims that were not alleged to be infringed. And so they haven't been able to show the concrete and particularized injury in fact that would be required for standing. Could you identify the claims that were canceled versus the claims that are not canceled? Yes, Your Honor. In the other IPRs regarding this patent, claims 12 through 15 were found unpatentable. So it's only claims 1 through 11 that are left. And claims 12 through 15 were the only claims that were asserted in the district court litigation? I think it was only 12 and 13, Your Honor. So it didn't even go to the full extent. Yes. Do you happen to know how claims 12 through 15 are different in substance than claims 1 through 12? Yes, Your Honor. We can look at those claims. They're in the court's appendix. And this is pages 30 and 31. So claim 1, for example, requires certain network functions, including sending the request through the network and retrieving data from a data store. And then again, sending the data through the network. Claim 12, which is a device claim, is directed to operating the mobile station, i.e. a handset, and does not, for example, include the retrieving data step. Nor is that present in claim 13. So the claims have different scope. Were 12 and 13 canceled in a re-exam? No, in companion IPRs, Your Honor. So this is the third IPR involving this same patent. And that IPR's petitioner was LG or Google? Or who? In one case was LG and Google, and in the other case was Apple. Okay, so were claims 1 through 12 challenged in those IPRs? No, it was limited to claims 12 through 15. What happened first? Were the claims canceled in the patents, and then the  Or what was the timing of that? I honestly don't remember the exact timing, Your Honor, but I think the dismissal may have come first. The papers withdrawing the claims from the litigation, I think were filed in November of 2015, and that was prior to the decisions in the other IPRs. So have you threatened an action against LG or Google on the claims 1 through 12? No, Your Honor. It's my understanding that Google has never been noticed of alleged infringement, has never been sued. And since this patent was withdrawn from the LG litigation, there's been no further discussion about it between the parties. Why is it that you didn't bring up the standing argument until now? It didn't occur to me, Your Honor, and until the court issued its order, I hadn't really considered it. Okay, anything else you want to add? No, Your Honor. Okay, we'll take that matter under advisement when at the same time we consider the merits. But as I said, we need any information that you think from the record that might not have already been provided to us that's relevant. Certainly. Okay. All right, let's turn to the merits. And we'll give you three minutes for rebuttal. Is that right? Yes, Your Honor. Thank you. Okay. And I guess, Your Honor, before I turn to the merits argument, if I could just briefly respond on the claims issue, with Your Honor's permission. Very briefly. So we believe from a claim perspective, Let's start at the clock. He's going to have to eat up some of his clock to do that. That's fine, Your Honor. So I think just a couple of simple points. I think if you look at the claims, there are a lot of similarities here. In fact, if you look at the contentions, the document I pointed to and that we will submit, they never limited their contentions. They said this is what they're asserting now, but they reserve all rights. And given the patent was dismissed without prejudice, and you'll look at their contentions, they're pretty broad. And given the similarities in the claims, we believe we certainly, this is, again, not like consumer watchdog or hygienics, where the appellant was not engaged in activity that could give rise to an infringement suit. And when you couple that with the 315B bar and the 315E bar, we think collectively all of that provides standing here. So with that, if I could turn to the merits. We believe this court should set aside the board's decision for two independent reasons. First, the board violated the APA. In failing to fully and particularly set forth its basis for finding that the priority at issue, the stack reference, does not satisfy the without preregistering claim limitation. Second... You're not arguing anymore that they violated the APA because they ignored your first argument. I mean, the board thinks it didn't ignore your first argument. It may not have explained itself as well as it should have, but it didn't ignore, at least it says it didn't ignore your argument. Right, Your Honor. That's what the board did in its re-hearing decision. It tried to recast its re-hearing decision as saying what we pointed to as the optional feature. We relied on it for the main argument, which is the no requirement argument as we've been referring to. In the briefing, I think the issue we have here with the board's decision from an APA perspective boils down to this. If you look at the institution decision, the board, we had made two arguments. One was the no requirement argument where we, based on expert testimony, showed that STAC discloses that its processes are performed without preregistration. And second, we argued, we made an optional, what we've been calling the optional feature argument. We anticipated what Converson might argue, and we said, well, to the extent that's considered to be preregistration, it's optional. So what the board did in its institution decision, and you can find this at A156, the board agreed with us with respect to the first argument. You kept citing back to its institution decision. The board's not bound by its institution decisions. We've said that repeatedly. Let's consider the final written decision. Sure, Your Honor. And I think the point with respect to the final written decision is this. The board made preliminary findings in its institution decision, as you were saying. The problem that we have is the board never explained in its final decision so that this court could do the review that it needs to, to explain why it changed its position in its institution decision. Instead, they, without preregistering limitation, is a negative limitation. It could not have been clearer on that point. Is it another way of expressing what you're saying, that just looking at the final decision and even the reconsideration decision, it's not clear how they considered your argument that from silence in the reference, one should infer that the negative limitation is met? That's right. That's exactly right, Your Honor. And I think here, I think the board had a duty to explain when we went in with expert testimony from the perspective of one of skill in the art. We had testimony from Dr. Bartone in the record who went through STAC painlessly, limitation by limitation, and explained why one of foreigners' skill in the art understood STAC not to disclose the without preregistering limitation. And the board... So, but there was also expert testimony on the other side saying that one of skill in the art would have understood that at least as it relates to the M1, that it STAC taught the without preregistration limitation. And so, you've got competing experts. I mean, the board is allowed to choose one expert over the other, right? Your Honor, it's certainly allowed to do that, but we are missing that analysis from the board, right? So, what the board did... And that's, I get what you're saying, but I'm trying to figure out if, and I always, I hate this language in our cases, but we say it all the time, if we can reasonably discern the board's path. So, as to M1, as far as I can see, the only argument they had before it was that the standard, that substandard, the specific standard required preregistration. That's right, Your Honor. And I think if you look at that particular argument, that the only thing that they had, the other side pointed to, was exactly what you're saying. But I think if you look at STAC, and that's specifically, let me point the court to page 531 of STAC, if you could just spend maybe a couple of minutes looking at it, STAC... Can I just say something? That the board did not consider this argument, or I don't see where the board considered this argument. Do you agree with that? Because I look at the expert, is it Mr. Konchitski's declaration and the argument that he makes, but do you agree that the board didn't consider that either? I absolutely agree, Your Honor. And I think that's our point. And I think going back to the burden of proof point, before I get to 531, I think what the board did and what ConverScent tries to do here is, they try to hide behind the burden of proof. They said, well, Google and LG had the burden of proof. We agree, we had the burden of proof. But here, for the board and ConverScent to rely on the burden of proof, two things needed to happen, or one of two things needed to happen. One was that the board needed to make a finding that there was contrary evidence from STAC that was either persuasive, that's one, or the board needed to say, well, the evidence was counterbalanced here. It didn't make any of those findings. So I totally agree with you, Judge Stoltz. The board did lay out the fact that these alternative arguments, one had been made by you, one had been made by them. Did the board ever say, we agree with ConverScent on this argument or not? Did it just lay them out and then not meet them head on? So in its institutional decision, and I know you don't want me to go there, but I think in its institutional decision, the board agreed with us with respect to the first argument, the no requirement argument, that that was the basis for institution. And then it said, we don't agree with your optional feature argument and we will not institute on that basis. And in fact... But to get to Judge O'Malley's question, the board did in fact address the patent owner's argument that came out of the patent owner's preliminary response about a theory that there was something about the storage of subscription data satisfying or being a form of preregistration and therefore defeating an anticipation theory based on this one reference, right? So, Your Honor, just to make sure I understand your question, I think what the board did here was they actually held the contrary. They said, if you look at the optional feature argument, they said, look, we're not so sure that this optional feature that you're pointing to is preregistration. Therefore, we will not institute on that basis. Let me try to divide this. There are three buckets in my head right now. One is in the institution decision, the board found that there wasn't anything in this reference that disclosed preregistration. Then the second thing, bucket, is your, I guess, backup argument that to the extent that this one theory is preregistration, it's optional. And then the board said in the institution decision, well, we don't think that's preregistration because that's dealing with M2, not M1. So that's not preregistration of a location finding service by M1. And then the third thing was in response to what the patent owner said in the preliminary response where the patent owner said, there's this disclosure in stack about storing subscription data and that subscription data discussion is proof that there is something called preregistration going on here in stack. And in the institution decision, the board said, no, that's not preregistration. Absolutely right. Then in the patent owner response, the patent owner further developed the theory about why the subscription data is in fact a preregistration. And then it had an expert that submitted a declaration. As I read the board's decision in the final written decision, the board did not actually address what the content of what the patent owner's expert said in support of the patent owner's response about the subscription data. Is this a fair understanding of what happened? It is, Your Honor. And I think that's the nub of our APA argument that the board should have done that. And I think what's telling here is going back to Judge O'Malley, your question about the GSM standard that they pointed to and their expert. If I could just have the court look at A531 at the bottom. We think this really resolves the argument in our favor. Let me know when you're there. Speaking of the APA, we can't do that. Yeah, you're not asking us to look at that GSM network discussion and in the first instance make a declaration of whether or not that's preregistration, do you? Your Honor, I'm not. But I think this court certainly, when the facts are pointing all in one direction, certainly this court can reverse if it chooses. Certainly, you know, we understand if the court just wants to remand. We're fine with that. But we think there's enough in the record here, especially if you look at the board's institution decision, the final decision, the evidence that they pointed to, which is what I'm going to address now. But it's a factual question as to what Stack talked, right? It is, Your Honor. But I think Stack could not be more clear on this point, which is why I want to make sure the court looks at this. I don't think you're going to convince us to make findings of fact in your favor. The only question is whether the board failed to make findings of fact against you. Sure. So back to my question. And I think your answer is going to be no, they didn't. But we very often have these situations where parties come up here, petitioners as well, and they'll say, look, the board laid out both sides' arguments and said, I agree with X. That means everything that it laid out should be considered part of the board's decision. In this case, the board did reference the GSM standard as part of Conversant's argument. My question is, is there anything in the record where the board says we agree with Conversant on that issue? There is nothing in the record, Your Honor, on that point. And did you put in expert testimony that says that GSM 03.71 would not teach one of skill in the art? We did not, Your Honor. And I think there are two responses to that. One is kind of, as Judge Chen pointed out, their argument just built on the HLR argument, which the board relied on its institution decision. That said, and the board agreed with us at institution, and even it's in final decision, that such disclosures are not pre-registration. And I forget the institution decision right now. The question is, did the board say in its final decision that we agree now, having seen all this expert testimony, that GSM 03.71 requires pre-registration? It did not, and that was error. And Judge O'Malley, if I could just point very briefly to A531 and 532. I know this court may not want to make the fact findings, but I think on the GSM standard, this point is dispositive. Because if you look at A531 and 532, it says in connection with the signaling method, the location of the ladder mobile station may be determined in accordance with the procedures described above or in another way, and could be in accordance with GSM 03.71. We think that's dispositive with respect to the GSM 03.71 argument, because STAC itself says it's optional. And as soon as it's optional under this court's case law, the court has to find in our favor. So your point is that there's expert testimony on this GSM 03.71, and you did not have to put in other expert testimony responding to it. But the problem is that there's an APA problem if the board didn't consider convergence experts declaration. That's right, Your Honor. And even if it had, we think it would have ruled in our favor because of the point I just made. Okay. You're well into your rebuttal time. Why don't you keep the rest of it. Thank you. Your Honor, it was a failure of proof, not an error on the part of the board that led to the petitioner's loss at the IPR. Both of the petitioner's arguments were considered. The evidence cited in support of those arguments was considered, laid out in both the final decision and the rehearing decision. I'm having a hard time seeing where both arguments were considered in the final decision. Can you point to me exactly where you're identifying that? Yes, Your Honor. We start on appendix page nine at the very bottom. And this refers to first, the so-called negative limitation argument. Petitioner argues that without pre-registering limitation in the claims is a negative limitation that recites something the claims lack. Over the page, petitioner argues that as a consequence of being a negative limitation, the without pre-registering feature need not be expressly disclosed in the prior art reference, but rather may be described adequately if the reference does not require the presence of the feature. That's an exact recitation of the negative limitation argument that the petitioner made. The board goes on and says, petitioner argues that the systems and method disclosed in STAC do not require pre-registering for the location finding service. And in support of its argument, petitioner relies on STAC's disclosure, etc. So that's moving on to the alternative argument now. But where do they, even if you're right and they identify the argument being made, the first argument, where is it that the board addresses it? In the very next sentence, your honor, both of the petitioner's arguments relied upon the same evidence that the board labeled the STAC check feature. What if we disagree with that? What if we think Google LG had two different arguments? One, argument number one, is that STAC doesn't teach anything about pre-registration, period. Argument two, to the extent this optional feature with respect to MS2s choosing not to be found by MS1s, is considered to be pre-registration, which they don't necessarily concede. Well, then that is not a required form of pre-registration. It's just optional. And so, therefore, it's the board who mistakenly hooked up this optional feature for MS2s to stay, you know, unknown in terms of their location. The board mistakenly hooked that up to both arguments one and two. If that hypothetical is right, that the board misread argument number one, then doesn't this need to go back? No, it doesn't, your honor. Because why? Because the board has indicated they reviewed the party's arguments and evidence of record, and upon that review... But that's premised on hooking up the optional feature to both arguments one and two. I just said, what if that's a misreading of Google LG's argument number one? I disagree that it's improperly hooking up. There's nothing in that statement... It's a hypothetical. What if it is a mistake? And what if it is a misreading? Then wouldn't you agree this has to go back because the board's decision in rejecting the unpatentability theory with respect to argument number one is based on a mistaken premise? No, your honor. There's nothing that requires the board to agree with Google's argument. No, of course not. The question is, did it understand Google's argument? And I'm telling you, what if they didn't understand correctly Google's argument? It's clear to me that in the institution decision, they had a pretty firm conception that argument one from Google was separate and independent from argument two. Then in the final written decision, I'm not sure why, they collapsed the two arguments to be premised on the single idea of this optional feature. Let me address that part in a moment, your honor. But to answer your question directly, yes, if the board made a mistake in not considering an argument, remand is appropriate. They didn't make a mistake. And the reason they didn't make a mistake is because they followed the petition exactly the way it was laid out. Now, it was the same person who wrote the institution decision who wrote the final written decision. And she didn't make any errors. All right. Do you think that... I'm sorry, but just to follow up, do you think the final written decision tracks the institution decision? Because I see a lot of daylight between those two decisions in terms of how the board understood Google's arguments. No, I think they understood it well and they considered... You think they're the exact same thing? The institution decision and the final written decision? They're not exactly the same because the standards are different at trial than they were at institution. No, but in terms of understanding what Google's arguments were. As I understand it, what you're saying is that at the final written decision, they said, okay, Google, we listened to you. We listened to all of this. We had this hearing and the only evidence you put in related to M2. You didn't put any evidence in as it relates to M1. Is that what you're saying? That's exactly right, Your Honor. But why didn't the board come right out and say that? Well, I think they did. They clarified that in the rehearing decision, Your Honor. In the rehearing decision, and I'm looking now at page 16 of the record, the reason they disagreed with this same argument that's being made by the petitioner for rehearing is it because the stack check feature was relied upon by petitioner, not just for the contingent argument, but also for the negative limitation argument. It was the same evidence that Google advanced with respect to both arguments. And we can see this clearly at pages 61 and 62 of the record. This is the part in the petition where Google lays out both arguments. They begin with the negative limitation argument and they allege stack nowhere discloses that pre-registration is required to access the location-based service. And what evidence do they cite? Like the 667 patent, stack discloses that a mobile station may not release its location information to others. And then they rely on the same evidence in stack for their so-called optional argument by saying, and to the extent patent owner proposes that maintaining and using a list of entities that are permitted to receive location information is considered registering. Stack makes clear such features are optional. Do you think Mr. Bartone's declaration is also just limited to M1 or M2 with respect to the argument that he makes about how stack doesn't disclose a pre-registration process? Well, Mr. Bartone's declaration, Your Honor, is even more void of evidence because the argument that's made by Mr. Bartone appears at page 723. And he States only a conclusion stack does not disclose anywhere that pre-registration is required to access the location services disclosed in stack. Do you think that that sentence is limited to M1 or M2 or is it the entire reference? Well, it appears to be the entire reference on its face, Your Honor. But absence of disclosure is meaningless. What matters is what the person of ordinary skill in the art would understand from the reference. And that was the point. What about what one of a person of ordinary skill in the art would understand from or infer from the silence in the reference? Isn't that the relevant question in Sue Kemme? I think it is. I think it is. And that was the question that Google failed to answer or at least when they answered it, they answered it with respect to the wrong mobile station. I go back to pages. Well, it's confusing because you're, again, your theory for an affirmance is based on the board correctly understanding the broad argument that there's nothing in stack that discloses pre-registration as being hooked up to this optional feature or arguably optional feature about MS2 versus MS1. But when you look at this claim chart by this expert, you know, right after the line you quoted at A723, the expert then goes on and says, I have also been asked to consider the scenario where maintaining and using a list of entities that are permitted to receive location information as disclosed by stack is interpreted as being similar to the claim pre-registering. So to me, that juxtaposition and transition to this additional thought really further supports the idea that this is a second different argument relating to the optional feature compared to the broader initial argument that Google was advancing. Nobody disputes that there were two arguments, Your Honor. The question is, what was the evidence advance in support of those arguments? And the petition makes clear that it was the same evidence. It was the same disclosure in stack that the petitioners were relying upon. And that's where the board found that that evidence would not apprise a person of ordinary skill that no pre-registration was required. Google didn't explain why the silence was meaningful. And that's what Sue Kimme says, is it doesn't say silence alone is the answer. Correct. It says, and in fact, in that case, it said, yes, it's silent. It doesn't explicitly state it, but if you actually look underneath at the reference, you can find that it essentially teaches it. Exactly. And so I guess what I'm having trouble with, it would be a lot nicer if the board had said, we're looking underneath at the reference. We see GSM 0371. Google puts in nothing to say that that wouldn't, that wouldn't teach registration. We've got an expert that says it does, and their expert, all their expert turns to is this optional feature at M2. But, I mean, we could write that opinion for you, but we can't write it for the board. Or we could write the opinion that your friend on the other side wants that says, well, we're looking at STAC and we don't see that GSM 0371 is required. But again, we can't write that opinion either. So I guess what my problem is, the board just didn't say enough. I think they did, Your Honor. They didn't have to get to the patent owner's case. They only had to get as far as the failure of proof in the petitioner's case in chief. If the petitioner doesn't meet the burden of persuasion, patent owner doesn't even have to put in any evidence in order to win. So what the board is saying is, petitioner, you didn't get far enough over the line. The board didn't have to consider our standards-based argument. They didn't have to consider our expert's testimony about what the standards mean. Can I go back to page 87.3 with you? In here, it says STAC does not disclose anywhere that preregistration is required. And then later for the alternative argument, they're looking at what the parties have been referring to as the STAC check. How can we say that the discussion, the first argument is limited to the disclosure of the STAC check where the expert is saying that STAC doesn't disclose it anywhere, meaning that he's referring to this full reference? You look to the petition, Your Honor, because the petition explains the basis for the argument. But aren't we now looking at the expert testimony? Well, the expert testimony is just the conclusion, Your Honor, and the board doesn't have to accept naked conclusions. The board needs to understand why the conclusion was reached. And the Bartone Declaration doesn't say anything other than, I can't see where it's disclosed in the reference. That alone means nothing. We look to the petition. Is it your position that the expert had to go further and say, I think one of ordinary skill in the art would infer from this that the reference doesn't teach, that the reference doesn't satisfy the negative limitation? At a minimum, that would be required, Your Honor, yes. But, you know, even if it's true, and I accept your proposition that the patent owner doesn't have to put in any proof, wouldn't the board have to at least refer to STAC itself and say, it doesn't explicitly say no pre-registration, but when you look at how it operates, because it relies on the standard, we believe that it does, just like the district court did in Sioux Chamois. No, I don't think the board has to go that far, Your Honor. The board doesn't have to make the petitioner's case for them. The board simply has to look at the evidence that was proffered by the petitioner and decide whether or not that meets the requirement for anticipation. And here, that's what the board did. They looked at the evidence, the passage that I cited from their petition. It refers to the STAC check feature, and they decided that doesn't explain why a person of ordinary skill would have inferred no pre-registration. Absent that, they can't show anticipation, and the board's job was done. Any final words, or just about out of time? Just, Your Honor, we believe that an affirmance is appropriate in this case for the reasons outlined in our briefs and here this morning. Just a quick follow-up question. What if we feel like we have to remand this? Are there any other arguments to defeat the unpatentability challenge you think the board would need to consider aside from your reliance on the GSM storage of subscription data theory? Yes. Are there other limitations that the board didn't address because it didn't feel like it needed to address that you would think on remand would have to also be confronted by the board in resolving whether these claims are unpatentable? Thank you, Your Honor. Yes, there are several arguments. We advance an argument concerning the retrieving data limitation and about which data it is that is retrieved and which data it is that is sent. We advance an argument about which mobile station it is that is engaged in the request for the location-finding service. And we advance an argument concerning what is location-finding information as recited in Claim 1. Okay, this is all in your patent letter response? Yes, it is, Your Honor. It begins at appendix page 202, and there's about, I think, 8 or 10 pages worth of argument. Okay, thank you. Thank you. Was Dr. Bartone ever deposed? Yes, Your Honor, he was. Did he ever address Mr. Kaczynski's theory on why, in fact, there is preregistration with that subscription data? So that came later, Your Honor, because he was deposed before they put in the patent on a response with that argument. And I think going back... He was deposed after that or before? No, he was deposed before they put in the DSM 3.71 argument. One of my problems is there are two different issues. One is, did you present evidence on a particular theory? The other is, did you ever even fully develop the theory? So it's one thing to say I made a one-sentence argument like the one that's pointed out in your brief that's totally conclusory, and another thing to say that you adequately developed the argument for purposes of presenting it in the IPR. Your petition says negative limitation, it's not there, and then goes on and develops this stack check theory. So where did you develop this theory that you wanted the board to somehow figure out? Your Honor, we did develop it, and I think if you look at it, you have to look at the petition and the expert declaration collectively. And I think if you look at it collectively, Dr. Bartone spent pages and pages going through Claim 1, and he also had... Before he went through Claim 1, he went through Stack and showed why Stack did not require preregistration. But he only talked about the optional feature at M2. Where did he talk about M1? So, Your Honor, I think it goes back to what Jess Stoll was pointing to, which is at A723, and I think one critical piece that's missing here is they keep on saying we're pointing to the wrong mobile station, the M2, but if you look at the Figure 2 embodiment of Stack, that talks about M1. There is only one mobile station that's requesting information about its location. And if you look at, like I said, A723, he points back and says, as I discussed above, he points to the discussion above, and then if you look at, for example... But his discussion above is one sentence. It's just not there. Right. And I think that's one of our key points, Your Honor. This is a negative limitation. It can be satisfied by one of two ways. One is silence in the prior art we think is enough. Do you agree, though, that silence in the prior art in every instance might not be enough? For example, you know, suppose there was a claim that was directed to a method of operating a vehicle without a steering wheel, okay? And then the reference didn't disclose a steering wheel, the prior art reference. In that case, you might have a different answer to the question than one where the claim was directed to a method of operating a vehicle without listening to the radio, right? Right. Absolutely, Your Honor. And I think what we're saying is if you look at what we presented, it's certainly enough under Sudkami. And if the court wants to go for it. I think it's Chamis because it is French. But what it said was you don't need magic words. So it acknowledged that the word uncoded was never used at all. So the fact that the word preregistration is not used doesn't answer the question of whether it is disclosed in the prior art. And I think, Your Honor, but the key is here. It's without preregistering. And if you look at our expert testimony, he said, well, nowhere does DACC require preregistration based on his understanding. And the testimony was from one perspective, one of skill in the art. But he doesn't explain it except for the optional feature. Your Honor, again, I think if you look at it, you have to look at the testimony collectively. If you look at A723, he does point to his discussion above where he pointed to the figure two embodiment and the figure seven embodiment. And in the figure two embodiment, it's only talking about one mobile station.  And then just one final point is that to the extent it's optional, we think we've been under that precedent too. You know, that's this court's case law in Prolitech. To the extent it's considered optional, we showed that if it's an optional preregistration feature, DACC would satisfy that. So are you saying that because the prior, DACC with reference to that standard that is being relied on by opposing counsel because it says could be, that shows that it's optional?  Exactly. Okay, thank you. Thank you, Your Honors. Thank you.